**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| **DAKOTA COTTENGIM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 1:21-cv-84 SNLJ |
| vs. ) | |
| ) | |
| **CHRISTOPHER BACON,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Christopher Bacon's motion for summary judgment. [Doc. 33.]

**I.   Background**

Plaintiff is incarcerated in the Missouri Department of Corrections ("MDOC"). On January 1, 2021, plaintiff was housed at Southeast Correctional Center ("SECC"). Plaintiff was known to the SECC prison guards at that time as having received six to eight violations for assaulting guards at SECC.  For example, on September 19, 2021, plaintiff punched a guard in the back of the head multiple times and punched another guard in the face, breaking the guard's nose and teeth.  During another assault, plaintiff knocked an officer's helmet off and split his head on the stool when the officer entered plaintiff's cell to move him.  Defendant was aware of these assaults, as defendant had responded to multiple of plaintiff's guard assaults.

1

Plaintiff claims that defendant violated plaintiff's Eighth Amendment rights by using excessive force while delivering milk to plaintiff. On January 1, 2021, defendant was giving plaintiff milk through the cell food port. After defendant gave plaintiff the milk, plaintiff reached his arm through the food port and grabbed defendant's wrist. Defendant, who states he feared for his safety, freed himself, jumped back from the door, and spontaneously kicked at the food port door as plaintiff's arms were still reaching through. Plaintiff alleges he suffered scrapes and deep bruising to his right upper arm, a swollen right shoulder, and that he still has difficulty rotating his right shoulder. Plaintiff testified that he has injured his hand multiple times while in the care of MDOC, and he cannot determine which of the multiple injuries causes his alleged ongoing pain.

MDOC policies allow offenders to raise complaints through an internal grievance process. To exhaust administrative remedies per MDOC policies, an offender must complete a three-step process, including filing an Informal Resolution Request ("IRR"), a Grievance, and then a Grievance Appeal. If an offender is transferred to another facility before filing an IRR, the offender has 15 days to file a grievance from the time of transfer.

Plaintiff was transferred from SECC to Potosi Correctional Center ("PCC") on January 12, 2021. He alleges he filed a grievance about the January 1 incident between March and April, but then he later states he filed the grievance in May. However, there is no record that plaintiff ever filed a grievance. Plaintiff submitted informal resolution requests on May 5, September 1, and September 17, 2021, all asserting that he filed a grievance in connection with the January 1, 2021 incident and that the claims were

intentionally lost by prison officials. Each time plaintiff filed an IRR, prison officials gave him a grievance form. However, plaintiff never submitted a completed grievance form, and the complaint was deemed abandoned.

Plaintiff filed this lawsuit claiming that his Eighth Amendment right to be free from excessive force had been violated during the January 1, 2021 events. Defendant now moves for summary judgment.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor

3

of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III.  Discussion

Defendant argues he is entitled to summary judgment because (1) plaintiff failed to exhaust administrative remedies, (2) the uncontroverted evidence shows defendant did not use excessive force, and (3) defendant is entitled to qualified immunity.

### A.  Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.  1997e(a) (2013). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

To exhaust his administrative remedies, an inmate must meet the deadlines laid out by MDOC. *Woodford,* 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). An inmate who does not file a grievance within the allotted time has failed to exhaust administrative remedies unless the prison officials waive the untimeliness of the grievance and address it on its merits. *Vaughn v. Gullett*, No. 4:19-CV-2566 JAR, 2020 WL 7056163, at *5 (E.D. Mo. Nov. 30, 2020).

4

As indicated above, MDOC employs a three-step procedure for its prisoner administrative remedy system which includes an Informal Resolution Request ("IRR"), a Grievance, and a Grievance Appeal. An inmate must file a grievance appeal to fully exhaust his or her administrative remedies. A grievance appeal can be filed either when an inmate is either unsatisfied with a grievance result or if the grievance is not responded to in a timely manner. Important to the facts here, when a prisoner is transferred following an incident, they are given fifteen days from the time they arrive at their new location to file a grievance.

There is no record of any grievance filed by plaintiff related to the events of January 1, 2021. Plaintiff alleges he filed a grievance around March or April, but that prison officials lost the grievance he filed. Plaintiff does not point to any evidence to support this allegation besides his conclusory statements, which are insufficient to create a dispute of material fact. *Vaughn v. Gullett,* 2020 WL at *4.

Even if plaintiff had filed such a grievance, it was untimely.  Plaintiff transferred to PCC on January 12, 2021, and according to MDOC policy, he was required to file his grievance by January 27, 2021. Plaintiff alleges to have filed the grievance around March or April.  So, by plaintiff's own admission, he did not file his grievance before January 27, 2021, failing to exhaust available administrative remedies.

Even if plaintiff timely filed a grievance, he still failed to exhaust his remedies, as he never appealed it. Plaintiff claims in his complaint that he did not file an appeal because a prison official told him the appeal would get lost like his grievances. But Section 1997(e)(a) "does not permit the court to consider an inmate's merely subjective

5

beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'" *Lyon v. Vande Krol,* 305 F.3d 806 (8th Cir. 2002). MDOC policy provides that if prison officials do not respond to a grievance during the response time limit, the offender can move on to the next stage and file a grievance appeal. Plaintiff failed to complete the prison grievance system following the alleged failure to respond, so he again failed to exhaust available administrative remedies.

Courts have held that allegations of prison officials denying inmate grievance forms are sufficient to support an inference that the administrative remedy was unavailable. *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001). However, Plaintiff never contends that prison officials denied his requests for grievance forms. Plaintiff filed multiple IRRs from May to September 2021 about the January 1, 2021 incident. Each time plaintiff filed an IRR, he was given a grievance form, which he failed to pursue, and each complaint was ultimately dropped for failure to file a grievance. Because plaintiff had access to grievance forms and failed to file them, he failed to exhaust his available administrative remedies.

Because plaintiff failed to exhaust the administrative remedies available to him, defendant is entitled to summary judgment as a matter of law.

  **B.**  **Excessive Force**

Even if plaintiff had appropriately exhausted administrative remedies, and it is clear he did not, defendant would be entitled to summary judgment on the merits of plaintiff's excessive force claim.

6

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) (quoting *Whitley v. Alberts*, 475 U.S. 312, 319 (1986)). There is both an objective and subjective requirement in Eighth Amendment excessive force cases that plaintiff must prove. *Thomas v. N.,* No. 1:07-CV-114-SNLJ, 2009 WL 3617556, at *3 (E.D. Mo. Oct. 29, 2009), *aff'd*, 382 F. App'x 538 (8th Cir. 2010).

The subjective standard is met when the prison official has a "sufficiently culpable state of mind." *Id.* The culpable mental state required in excessive force cases is both a malicious and sadistic state of mind. *Santiago v. Blair*, F.3d 984, 990 (8th Cir. 2013), (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). If the force is applied in a "good-faith effort to maintain or restore discipline," then there is no culpable mental state. *Id.*

> "We employ this standard because, in a disturbance, prison officials must balance the threat the disturbance poses to prison employees, inmates, and others, against the harm that may result from the use of force. A disturbance also requires corrections officers to act "in haste, under pressure, and frequently without the luxury of a second chance." The "malicious and sadistic" standard reflects the deference we give to prison officials who respond to an emergency."

*Taylor v. Dormire,* 690 F.3d 898, 903 (8th Cir. 2012) (quoting *Whitley,* 475 U.S. at 320). An offender's history of assaulting corrections officers is a factor in determining the officer's subjective need to use force. *Brown v. Hancock*, No. 4:10CV2045 HEA, 2013 WL 1395891, at *6 (E.D. Mo. Mar. 31, 2013); *Thomas,* 2009 WL 3617556, at *4.

Plaintiff argues that <u>defendant</u> grabbed the plaintiff and pulled him toward the food port door, apparently due to maliciousness, and that such an act constituted

7

excessive force.  But the video evidence demonstrates otherwise.  The video of the incident shows defendant walking toward the plaintiff's cell door, opening the food port door, putting milk inside, and then moving to close the food port door.  As defendant is closing the food port door, it appears that plaintiff grabs defendant through the port and jerks him toward the door.  The video shows that defendant acted to free himself from plaintiff's grasp as plaintiff pulled defendant toward the metal cell door.  Defendant struggles to free himself, and then he kicks at the food port door.  Plaintiff continues to wave his arms around outside the food port door, reaching toward defendant, before defendant moves away from the cell door.  The video demonstrates defendant was not malicious or sadistic, but rather he acted in an effort to free himself from plaintiff's attack and restore order.

Defendant is thus entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. 33] is GRANTED.


Dated this   21st   day of December, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

8